UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-14042-CR-CANNON

UNITED STATES OF AMERICA

vs.

PAUL VERNON HOEFFER,

           **Defendant.,**
_____/

## UNITED STATES' RESPONSE IN OBJECTION TO DEFENDANT'S MOTION FOR DOWNWARD VARIANCE

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files its Response to Defendant Paul Vernon Hoffer's ("Defendant"') Motion for Downward Variance. The United States of America ("the Government") respectfully asks this Court to DENY Defendant's Motion for Downward Variance and sentence Defendant in accordance with the sentencing guidelines applicable in this case as calculated by the United States Probation Office.

### BACKGROUND

On November 18, 2021, Defendant was charged by indictment with three counts of interstate transmission of threats to kidnap or injure, in violation of Title 18 United States Code, Section 875(c). (DE 3). On January 21, 2022, Defendant entered a guilty plea, as charged, to each count in the indictment. (DE 29). On February 25, 2022 and

March 25, 2022, the Presentencing Investigation Report and Addendum were filed by US Probation. (DES 36, 39). On March 10, 2022, Defendant filed the instant motion. (DE 37). Defendant's sentencing hearing is currently scheduled for Friday, April 1, 2022. According to the Presentence Investigation Report ("PSR"), Defendant has a total offense level of 20 and criminal history category of I, which yields an advisory sentencing guideline range of 33 – 41 months' imprisonment. (PSI at ¶ 77.) Defendant faces a statutory maximum of 180 months of imprisonment.

The United States respectfully submits a downward variance is not warranted, and that a sentence of 41 months' imprisonment, which is at the top of the advisory guidelines (33 – 41), is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate specific and general deterrence, and protect the public from further crimes of the defendant.

## OFFENSE CONDUCT

On or about March 28, 2019, United States Capitol Police (USCP) Threat Assessment Section (TAS) notified the Federal Bureau of Investigation (FBI) of threatening telephone calls received by Congressperson Nancy Pelosi's (N.P.) Washington D.C. office. The telephone number that placed the calls and left a recorded message was a T-Mobile cellular telephone account assigned to Defendant. During that

2

call, Defendant told a staff assistant, "Tell that cunt to step down or I'm going to come a long, long way to rattle her head with bullets. That's a fucking promise."

Approximately one hour later, Defendant again called and told a staff assistant, "Tell that cunt I'm coming to cut her fucking head off." At this point, the staff assistant transferred the call to the USCP TAS Duty Desk. Special Agent Joshua Bank spoke with Defendant. Defendant denied, to SA Bank, that he had made any threats and then asked SA Bank, "you know how hard it is to prove someone made a threat?" SA Bank advised Defendant of the criminal penalties for making threats, and Defendant responded that he was not concerned with a life sentence because he had lived a long life already. Finally, Defendant left an additional recorded message for victim N.P., stating, "Hey you fucking cunt, Nancy, get ready to get your fucking head cut off Jihadist style, you little fucking cunt. Sleep with one eye open, we're coming to get you. America's tired of this shit . . . all-out war. Bunch of you fucks are gonna die." Subscriber information and GPS location data for these calls resolved to Defendant in and around St. Lucie County.

Upon being alerted to these calls by the Congressperson's office, FBI in Fort Pierce responded to Defendant's residence to attempt to make contact with him. At that time, they were only aware of the phone calls to victim N.P. Upon speaking with Defendant, Special Agents admonished him and explained that he should not be

making calls like this and that they were perceived as threats by N.P. and her office. Defendant apologized and agreed he would not continue to make these types of calls.

On or about March 27 through March 29, 2019, the Cook County State's Attorney Office, located in Illinois, received, and subsequently notified the FBI about, threatening telephone calls (seven) received in the form of voicemail messages directed at State Attorney Kim Foxx (K.F.), which showed subscriber information and GPS location data belonging to Defendant, in and around the St. Lucie County area. On March 28, 2019, Defendant left a message stating, "Yeah, I want to speak to the nigger cunt. Sleep with one eye open, you fucking cunt." Approximately thirty minutes later, he called again stating, "I want to speak to the nigger cunt, Kim Foxx. What a fucking douchebag nigger you are. Bullets are going to rattle your fucking brain, cunt."

Despite Defendant having assured FBI he would not continue to make calls of this nature, on November 11, 2020, Congressperson Alexandria Ocasio-Cortez's (A.O.C.) New York office received a threatening voicemail message from Defendant. During the recorded message, Defendant said, "You're away from the phone fucking the American people. Listen here you little communist cunt—I'll rip your head off and shit down your neck, you little fucking cunt. Do you understand me? The civilian army. Keep one eye open when you sleep, you little fucking cunt. Your mama's pussy stinks, and your daddy don't wash his fucking ass. You should have been aborted you little [unintelligible]." GPS location data for this call also resolved to Defendant around the

4

Palm Beach County area. Subsequent to this last phone call being placed, Defendant was indicted and arrested.

## ANALYSIS

*Nature and Circumstances of the Offense*

The nature and circumstances of this offense justify a guideline sentence, even after consideration of Defendant's acceptance of responsibility, his lack of criminal history, his medical condition, and his employment.

There is absolutely nothing criminal or concerning about vibrant and sometimes even heated political discourse. It is fundamental to an engaged American society. It is the passion that causes people to vote, to fight for the right to vote and even to run for elected office. As technology continues to advance and people are able to connect with others on a global platform, the ability to reach a wide audience as a relatively unknown candidate continues to grow. This expands the ability for people to lead who come from a diverse set of backgrounds and political ideologies. Even when political discourse is not especially eloquent or even well-informed, we cherish our constitutional freedoms, as Americans, and the rights we are promised, to harbor and even speak aloud our opinions and thoughts about parties, about people, about presidents.

The nature and circumstances of this case, however, are not about political discourse, disagreement about policy choices or congressional votes taken. This is not a case about a disagreement with a charging decision in a criminal case. The nature and

circumstances of this case belie a criminal defendant so consumed with sexist, racist and vitriolic anger that he threated to *kill people*. The Court would not be presiding over a case where Defendant simply called public officials and told them he hated them, or thought they were terrible, or wanted them thrown out of office. Let Defendant not be confused as to what behavior is actually being punished as a result of this federal criminal case.

Defendant, someone who represents himself as gainfully employed, a hard-working individual with various responsibilities in life, found time to call women to tell them he was going to shoot them in the head, or cut their heads off, and that they were going to *die*. And he did not do it once, but multiple times on multiple days. Defendant, who bragged to capitol police that it was essentially too hard to prove that he was actually making a threat, reveled in the belief that he could intimidate people with threats to kill them with little to no consequences for his actions.

And importantly, Defendant did this *after the FBI showed up at his front door*. Defendant experienced something that most citizens of this country will thankfully never know – what it feels like to have special agents with the FBI come to your home to ask you about your own criminal conduct. He experienced something that would shock and likely scare a person to the extent that it would serve as a wake-up call. It is rare that a criminal defendant is told their behavior is criminal by a federal agent and accordingly *knows that law enforcement is aware of what they are doing* and continues to do it

6

anyway. It is an explicit demonstration to the Court that Defendant is someone who does not respect the authority of the federal government, nor the FBI and is certainly not fearful of federal prosecution. It is a dark reminder that Defendant is instead someone undeterred from criminal conduct by a simple admonition. The nature and circumstances of this offense are not a mistake, an accident, or a one-off. Defendant's behavior warrants an incarcerative sentence because he has already demonstrated that anything less will not stop him from engaging in criminal conduct.

*History and Characteristics of the Defendant*

In his motion for variance, defense points to the fact that Defendant has no prior felony record. But clearly, as the Court is aware, his lack of criminal history is specifically and numerically weighed by probation when formulating a criminal history category for him. He *has* been given credit for that lack of criminal history. To give him additional credit for his lack of felony history is simply to reward him twice for the same reason.

Similarly, his "acceptance of responsibility" is also numerically accounted for in the form of a 3-point reduction in his total offense level – a reduction that shelters him from two years – 24 months – of guideline range exposure. And although Defendant has indeed accepted responsibility by entering a guilty plea, the Government certainly would not characterize his behavior as immediate cooperation with the FBI "at his first encounter with authorities." This suggestion by Defendant is substantially undercut by him engaging in additional criminal conduct *after* his first encounter with these same

7

authorities.

Defendant also asks for a downward variance because he is gainfully employed and because he previously was diagnosed with cancer. With regard to his status as employed, Section 5H1.5 of the United States Sentencing Guidelines specifically mentions that when a Court is considering a request for a *departure*, a criminal defendant's employment record is not ordinarily relevant. And certainly, while an "extraordinary physical impairment" may be a justification for a court to depart downward, Defendant does not present as someone with a medical condition that is currently placing him at extraordinary risk, such that he cannot serve a prison sentence or be treated in the future, in prison. *See* §5H1.4, U.S.S.G.

"Because of its institutional advantage in making sentence determinations, a district court has considerable discretion in deciding whether the § 3553(a) factors justify a variance and the extent of one that is appropriate." *United States v. Shaw*, 560 F. 3d 1230, 1238 (11thh Cir. 2009) (internal citations omitted.) Really, in this case, the Court is being asked to vary downward, and to do that by considering, essentially, only the history and characteristics of the Defendant. But Defendant's lack of criminal history and health concerns do not paint a complete picture of who this Defendant is.

Not only does Defendant make threats to kill, the criminal conduct at issue, he married those treats with derogatory language that was both sexist and racist and specifically aimed at powerful women with whom he clearly harbors some deep seeded

8

resentment. He is not only threatening to kill these women, but coupling his threats with sexualized language like, "pussy," "cunt," "bitch" and specifically, as to K.F., twice makes reference to either a "dick" going in her "ass" or "cock" being stuck through her mouth and into her brain. This language, as argued above, is more than mere political rhetoric. It is ugly, dangerous and demonstrates characteristics consistent with crimes that do not warrant a variance from the guideline range.

*The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment for the Offense, Afford Adequate Deterrence, and Protect the Public from Further Crimes of the Defendant*

The public needs to be protected from Defendant's behavior and continued criminal conduct. As argued above, this is someone who is undeterred by admonition from the FBI. He is someone who clearly thinks he has the right to threaten whomever he wishes, whenever he wishes. And the ease at which he can continue to engage in this behavior, simply by picking up a cell phone, will only be mitigated by a period of incarceration. It is vital that the Court imparts a message that tells Defendant that this is not ordinary political discourse and we will not, as a society, permit people to threatened to kill or dismember those with whom we have fundamental disagreements. Defendant's sentence should promote respect for the law because he has certainly not displayed that respect up to this point. Finally, this Court should also consider the deterrence factor as especially important because the victims of these crimes are public

figures who should enjoy the right to do the jobs that they have been elected to do without fear of death threats, without fear of being told they will be shot. With all due respect to Defendant's position in this matter, he presents as a dangerous individual who appears especially hateful toward women. The Court's sentence should reflect the dire seriousness of this offense.

Given the nature and circumstances of this offense, the potential danger Defendant poses to the community, and the strong need for the Court's sentence to reflect the seriousness of this criminal behavior, the Government asks that this Court DENY Defendant's Motion for Downward Variance and sentence him to a sentence commiserate with the relevant 18 U.S.C. § 3553(a) factors to 41 months in the Bureau of Prisons.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By:  *Luisa Honora Berti*
     _____
     LUISA HONORA BERTI
     ASSISTANT UNITED STATES ATTORNEY
     Florida Bar Number 73462
     United States Attorney's Office
     101 South U.S. Highway 1, Suite 3100
     Fort Pierce, Florida 34950
     Telephone: (772) 293-0982
     Email: Luisa.Berti@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 29, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified.

*/s/ Luisa H. Berti*
Luisa H. Berti
Assistant United States Attorney

## SERVICE LIST
United States v. Paul Vernon Hoeffer
**Case No. 21-14042-CR-CANNON**
United States District Court
Southern District of Florida

| Party: | Counsel: |
|---|---|
| Plaintiff: United States | LUISA HONORA BERTI<br>Assistant United States Attorney<br>United States Attorney's Office<br>101 South US Highway 1, Suite 3100<br>Fort Pierce, Florida 34950<br>Email: Luisa.Berti@usdoj.gov<br>**via Notice of Electronic Filing generated by CM/ECF** |
| Defendant: Paul Vernon Hoeffer | MICHAEL OHLE<br>423 Delaware Ave<br>Fort Pierce, FL 34950-8355<br>Email: ohlelaw@aol.com<br>**via Notice of Electronic Filing generated by CM/ECF** |